UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BARBARA M. HELFRICH, | ) | NO. EDCV 06-1234-CT |
| | ) | |
| Plaintiff, | ) | OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

For the reasons set forth below, it is ordered that defendant's motion for summary judgment be GRANTED and judgment be entered in favor of defendant Commissioner of Social Security ("the Commissioner") because the Commissioner's decision is supported by substantial evidence and is free from material legal error.

SUMMARY OF PROCEEDINGS

Plaintiff, Barbara M. Helfrich ("plaintiff") is currently receiving benefits as she was found to be disabled as of May 28, 2001. Dissatisfied with this result, on November 16, 2006, plaintiff filed a complaint seeking judicial review of the denial of benefits prior to May 28, 2001 by the Commissioner pursuant to the Social Security Act ("the Act"). The parties filed a consent to

proceed before the magistrate judge.  On April 2, 2007, plaintiff filed a memorandum of points and authorities in support of remand or reversal.  On May 29, 2007, the Commissioner filed a motion for summary judgment.

SUMMARY OF ADMINISTRATIVE RECORD

1.  <u>Proceedings</u>

On December 21, 1999, plaintiff protectively filed an application for disability insurance benefits, an application for Supplemental Security Income ("SSI"), and an application for disabled widow's benefits alleging disability since September 29, 1999 due to cervical arthritis, migraines, artificial shoulder, carpal tunnel in right hand, hyperthyroidism and poor vision.  (TR 14, 44, 89-94, 100, 1519-21).[1]  The applications were denied initially and upon reconsideration.  (TR 44-48, 51-60, 479-82, 484-88; 1522-23).  On June 19, 2001, plaintiff filed another application for benefits, which was also denied initially and on reconsideration.  (TR 479-82; 484-88; 525-27).

On August 17, 2000, plaintiff filed a request for a hearing before an administrative law judge ("ALJ") in connection with her applications filed in December of 1999.  (TR 63-64).  On April 10, 2001, plaintiff, represented by an attorney, appeared and testified before an ALJ.  (TR 1524-47). The ALJ also considered vocational expert ("VE") testimony.  On May 7, 2001, the ALJ issued a decision that plaintiff was not disabled, as defined by the Act, and thus was

---

[1]  "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

2

not eligible for benefits.  (TR 451-58).

     On March 28, 2003, another ALJ issued a partially favorable decision on plaintiff's June 19, 2001 applications.  (TR 469-78). Calling the case "extremely difficult to adjudicate" and noting the evidence that plaintiff "clearly exaggerates her pain" and the "massive documentation of her alcoholism, symptom magnification, and chronic misuse of prescription medications," the ALJ nonetheless found that, as of May 8, 2001, plaintiff was capable of only a limited range of sedentary work and was, consequently, disabled, as defined by the Act, from that date forward.  (TR 472, 474, 477). Among the severe impairments found by the ALJ were several that first occurred or were diagnosed after May of 2001.  (TR 474 (left shoulder injury in July of 2002), 475 (myofascial pain syndrome diagnosed in August 2002)).  The ALJ specifically declined to reopen the prior December 1999 applications that were the subject of the prior unfavorable May, 7, 2001 decision.  (TR 469).

     Meanwhile, on May 10, 2001, plaintiff filed a request with the Social Security Appeals Council to review the ALJ's unfavorable 2001 decision on her December 1999 applications.  (TR 23).  On May 14, 2004, the Appeal's Council granted the request for review and remanded the case for further proceedings.  (TR 73-74). Specifically, the Appeals Council found that the in the 2001 decision, the ALJ had failed to make sufficient findings as to the requirements of plaintiff's past relevant work and failed to fully address the opinions of the state agency reviewing physicians, who assessed nonexertional limitations beyond those found by the ALJ. (TR 73).   Accordingly, the Appeals Council ordered the ALJ to "take

1  any further action needed to complete the administrative record and

2  issue a new decision on the issue of disability **before** May 8, 2001."

3  (TR 74)(emphasis added).

4      After the remand, on February 6, 2006, plaintiff appeared and

5  testified at a subsequent hearing.  (TR 1548-55).  On August 4,

6  2006, the ALJ issued a decision that plaintiff was not under a

7  "disability," as defined by the Act, during the relevant period of

8  September 29, 1999 through May 7, 2001 because during that period

9  plaintiff could perform a significant range of light work, including

10  her past relevant work as a unit clerk.  (TR 14-22).  On August 21,

11  2006, plaintiff filed a request with the Social Security Appeals

12  Council to review the ALJ's decision.  (TR 11).  On October 12,

13  2006, the request was denied.  (TR 8-10).

14      Accordingly, the ALJ's August 4, 2006 decision stands as the

15  final decision of the Commissioner concerning plaintiff's disability

16  before May 8, 2001.  Plaintiff subsequently sought judicial review

17  of that administrative decision in this court.

18          2.   <u>Summary Of The Evidence</u>

19      The ALJ's August 4, 2006 decision is attached as an exhibit to

20  this opinion and order and materially summarizes the evidence in the

21  case.

22              <u>PLAINTIFF'S CONTENTIONS</u>

23      Plaintiff contends as follows:

24  1.   The ALJ failed to properly consider and discuss the physical

25       and mental demands of plaintiff's past relevant work;

26  2.   The ALJ failed to consider the opinion of plaintiff's treating

27       physician, Douglas Ballaine, D.O.; and,

28

3.   The ALJ failed to properly consider the lay witness testimony.

STANDARD OF REVIEW

Under 42 U.S.C. §405(g), this court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and, (2) the Commissioner used proper legal standards.  Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996).  Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), but less than a preponderance.  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

When the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, however, the Court may not substitute its judgment for that of the Commissioner.  Flaten v. Secretary of Health and Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995).  The court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  42 U.S.C. §405(g).

DISCUSSION

1.   The Sequential Evaluation

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A).

The Commissioner has established a five-step sequential

5

1   evaluation for determining whether a person is disabled.  First, it

2   is determined whether the person is engaged in "substantial gainful

3   activity."  If so, benefits are denied.

4       Second, if the person is not so engaged, it is determined

5   whether the person has a medically severe impairment or combination

6   of impairments.  If the person does not have a severe impairment or

7   combination of impairments, benefits are denied.

8       Third, if the person has a severe impairment, it is determined

9   whether the impairment meets or equals one of a number of "listed

10   impairments." If the impairment meets or equals a "listed

11   impairment," the person is conclusively presumed to be disabled.

12       Fourth, if the impairment does not meet or equal a "listed

13   impairment," it is determined whether the impairment prevents the

14   person from performing past relevant work.  If the person can

15   perform past relevant work, benefits are denied.

16       Fifth, if the person cannot perform past relevant work, the

17   burden shifts to the Commissioner to show that the person is able to

18   perform other kinds of work.  The person is entitled to benefits

19   only if the person is unable to perform other work.  20 C.F.R.

20   §§404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

21       2.   Issues

22           A.   Past Relevant Work

23       Plaintiff contends that the ALJ failed to adequately set forth

24   the physical and mental demands of her past relevant work as a unit

25   clerk and compare them to her RFC.

26       At step four, plaintiff bears the burden of showing that she

27   does not have the RFC to engage in her past relevant work.  See

28

1  Lewis v. Apfel, 236 F.3d 503, 516 (9th Cir. 2001) (citing 20 C.F.R. §

2  416.920(e)).  More specifically, plaintiff must prove "an inability

3  to return to [plaintiff's] former type of work and not just

4  [plaintiff's] former job."  Villa v. Heckler, 797 F.2d 794, 797-98

5  (9th Cir. 1986); see also 20 C.F.R. §§ 404.1520(e); 416.920(e).  In

6  order to determine whether the plaintiff has the RFC to perform

7  plaintiff's past work, the Commissioner must ascertain the demands

8  of plaintiff's former work, and then compare the demands with

9  plaintiff's capacity.  Villa v. Heckler, 797 F.2d at 797-98.  The

10 Commissioner may rely on the general job categories of the

11 Dictionary of Occupational Titles ("DOT") as presumptively

12 applicable to plaintiff's past relevant work.  Villa v. Heckler, 797

13 F.2d at 798; 20 C.F.R. §§ 404.1566(d); 416.966(d).  A plaintiff can

14 rebut this presumption by showing that the duties in his or her line

15 of work are not those envisaged by the drafters of the applicable

16 DOT category.  Villa v. Heckler, 797 F.2d at 798.

17     Here, the ALJ determined that plaintiff had the following RFC:

18     [L]ight work with the ability to lift, carry, push and
       pull 20 pounds occasionally and 10 pounds frequently, and
19     stand/walk for six hours out of an eight hour workday
       except that she is precluded from activities requiring the
20     use of her right major hand above shoulder level.  There
       are otherwise no restrictions on sitting or use of her
21     hands at desk or table level.

22 (TR 18).  The ALJ correctly noted that plaintiff's past relevant

23 work as a unit clerk is classified by the DOT as semi-skilled light

24 work.  (TR 21).  See also DOT No. 245.362-014.  The ALJ further

25 found that, given plaintiff's assessed RFC, during the relevant

26 period she was able to perform the unit clerk job as she performed

27 it and as performed in the national economy.

28

1    These findings are adequate and are supported by substantial

2  evidence.  At plaintiff's administrative hearing held on April 10,

3  2001, the VE was given a hypothetical based on this same RFC and

4  opined that a person with such limitations could perform plaintiff's

5  past relevant work as a unit clerk. (TR 1543).  Indeed, the DOT

6  requirements of this job, which is essentially a desk job involving

7  recording of data and filing, do not exceed plaintiff's RFC as found

8  by the ALJ.  See DOT No. 245.362-014.  In addition, according to

9  plaintiff's own description, the requirements of her past unit clerk

10  job as she actually performed it did not materially differ from the

11  requirements of the unit clerk job described in the DOT.  (TR 111).

12    The ALJ's consideration and discussion of plaintiff's past

13  relevant work is free from material legal error and supported by

14  substantial evidence.

15          B.   Treating Physicians' Opinions

16    Plaintiff also contends that the ALJ erred in rejecting the

17  2002 opinions of her treating physician, Douglas Ballaine, D.O.

18    A treating physician's opinion generally is entitled to great

19  weight.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995)

20  (citation omitted).  "The treating physician's opinion is not,

21  however, necessarily conclusive as to either a physical condition or

22  the ultimate issue of disability."  Id.  The weight given a treating

23  physician's opinion depends on whether it is supported by sufficient

24  medical data and is consistent with other evidence in the record.

25  20 C.F.R. §§ 404.1527; 416.927.

26    "The ALJ may disregard the treating physician's opinion whether

27  or not that opinion is contradicted."  Andrews v. Shalala, 53 F.3d

28

1  at 1041 (citation omitted).  A medical opinion is considered

2  uncontroverted if all the underlying medical findings in the record

3  of plaintiff's physical impairments are similar.  Spraque v. Bowen,

4  812 F.2d 1226, 1230 (9th Cir. 1987).  To reject the uncontroverted

5  opinion of plaintiff's physician, the ALJ must present clear and

6  convincing reasons for doing so.  Andrews v. Shalala, 53 F.3d at

7  1041.  Even if the treating physician's opinion is contradicted by

8  other doctors, the Commissioner may not reject the opinion without

9  providing "specific and legitimate reasons" for doing so that are

10  supported by substantial evidence.  Rollins v. Massanari, 261 F.3d

11  853, 856 (9th Cir. 2001) (citation omitted).  "[A]n ALJ may

12  discredit treating physicians' opinions that are conclusory, brief,

13  and unsupported by the record as a whole," or "by objective medical

14  findings."  Batson v. Commissioner of the Social Security

15  Administration, 359 F.3d 1190, 1195 (9th Cir. 2004).

16       Here, the ALJ was required to determine whether plaintiff was

17  disabled, as defined by the Act, during the period from September

18  29, 1999 through May 7, 2001.  The record contains a number of

19  treatment notes from Douglas Ballaine, an osteopath who treated

20  plaintiff during the relevant period and beyond.[2]  Dr. Ballaine's

21  only treatment records from the relevant period are from March 30,

22  2001 through June 1, 2001.  (TR 1224-32).  The remaining treatment

23  notes post-date the relevant period.  In addition, Dr. Ballaine

24  signed a form in March of 2001 stating that plaintiff was

25

26       [2]Osteopathic doctors are considered "acceptable medical
27  sources" under the applicable regulations.  See 20 C.F.R. §§
    404.1513(a)(1); 416.913(a)(1).

28

1  temporarily disabled due to severe cluster headaches and depression.
2  (TR 404).

3      The ALJ properly disregarded Dr. Ballaine's March 2001 finding
4  of temporary disability because the doctor did not provide any
5  opinion regarding plaintiff's ability to perform actual work like
6  activities and because the opinion was conclusory, without objective
7  supporting clinical findings and related to a period of less than
8  twelve months.  See Batson v. Commissioner, 359 F.3d at 1195.
9  Plaintiff does not dispute this finding.

10     However, plaintiff contends that the ALJ failed to consider Dr.
11  Ballaine's subsequent opinions issued in 2002, over a year after the
12  relevant period.  (Plaintiff's Brief at 5-6).  Specifically,
13  plaintiff refers to an August 2, 2002 letter from Dr. Ballaine to
14  plaintiff's counsel, in which Dr. Ballaine states that plaintiff is
15  "100% disabled and will be permanently."  (TR 1382).  This letter
16  was written for the purpose of obtaining benefits (which plaintiff
17  is now receiving) and at counsel's request.  (See TR 1382 ("I hope
18  this letter helps you with [plaintiff's] case").

19     In the March 28, 2003 decision finding plaintiff disabled from
20  May 8, 2001 forward, the ALJ addressed Dr. Ballaine's 2002 opinions,
21  which were relevant to the post-May 7, 2001 period at issue in that
22  decision.  Notably, the ALJ gave Dr. Ballaine's 2002 assessment
23  "little weight for many reasons," including that Dr. Ballaine's
24  treatment notes "reveal that he is an advocate for the claimant,
25  actively trying to get her on Medi-Cal" (TR 474, 1457), that his
26  treating records "are perfunctory in their lack of clinical findings
27  on examination," and that it did not appear that he had obtained and

28

1  reviewed plaintiff's prior treating records which document her

2  "decades-long record of drug seeking and symptom exaggeration." (TR

3  474; see also TR 426-47; 1225-32; 1418-74).

4      Here, however, the ALJ was charged with determining whether

5  plaintiff was disabled **before** May 8, 2001.  Accordingly, unlike the

6  ALJ who issued the 2003 decision, the ALJ who issue the August 2006

7  decision at issue here was not required to discuss Dr. Ballaine's

8  2002 opinions because they significantly post-date the relevant pre-

9  May of 2001 period.  See Howard v. Barnhart, 341 F.3d 1006, 1012(9th

10 Cir. 2003)(ALJ need not discuss evidence that is neither significant

11 nor probative).  Plaintiff, however, contends that Dr. Ballaine's

12 2002 opinions are relevant because in his August 2002 letter, the

13 doctor referred to the fact that plaintiff has been his patient "for

14 over three years now."  (TR 1382).

15     Plaintiff's relevance argument is belied by the record, which

16 demonstrates that Dr. Ballaine's opinions concerning plaintiff's

17 condition apparently changed between 2001 and 2002.  In the 2002

18 letter, Dr. Ballaine refers to a litany of allegedly disabling

19 impairments, including a shoulder impairment, and carpal tunnel

20 syndrome, "muscle contraction" headaches, disorders of the cervical

21 and lumbar spine, carpal tunnel syndrome, severe depression and

22 methadone dependance.  (TR 1382).  In 2001, however, Dr. Ballaine

23 opined that plaintiff was temporarily disabled beginning in March

24 26, 2001 until June 26, 2001 solely due to "cluster" headaches and

25 depression.  (TR 404).  As discussed above, the ALJ specifically

26 addressed this temporary disability finding and properly rejected

27 it.

28

In any event, to the extent that Dr. Ballaine's 2002 opinions can be read to extend back in time to the relevant period in 2000 and 2001, they were properly disregarded by the ALJ.  Dr. Ballaine's treatment notes from the relevant period in 2001 show minimal physical examinations and no objective testing to support any assessed limitations.  Instead, these treating records essentially document plaintiff's subjective complaints of pain and her abuse of pain medication.  (See e.g., TR 1125 (recording plaintiff complaints of nausea and persistent migraines with back pain, diagnosing acute bronchitis and nausea); 1227 (recording subjective complaints of migraines and back pain and diagnosing severe headache); 1228 (diagnosing headache, noting that plaintiff is overusing Vicodin, but ordering refill of Vicodin); 1231 (documenting complaints of pain in head, back and shoulder and prescribing Vicodin).

The ALJ found plaintiff's subjective complaints not credible for a number of reasons (TR 18-19), a finding not challenged by plaintiff here.  Consequently, to the extent that Dr. Ballain's 2002 opinions relate to the pre-May 8, 2001 time period, the ALJ was free to disregard them because, based on his treating records from that time, his opinions concerning her limitations during that period are premised on plaintiff's subjective complaints.  See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)(where ALJ properly discounted plaintiff's credibility, ALJ is free to disregard doctor's opinions that are premised on plaintiff's subjective complaints).

Moreover, substantial evidence supports the ALJ's assessment of plaintiff's functional capacity.  The ALJ expressly considered all

12

the medical evidence of record, including Dr. Ballaine's opinions.

(TR 18).  The ALJ reviewed the objective medical evidence from the

relevant period concerning plaintiff's physical impairments, (TR 19-

20), and also noted evidence in the treating records that

plaintiff's complaints to her physicians of headaches and pain were

associated with her abuse of pain medication and connected with drug

seeking behavior.[3]  (See TR 19, 370, 1094-95, 1188).

In addition, the ALJ relied on the findings of Dr. Fredrick

Lieb, and orthopaedic surgeon who examined plaintiff consultatively

in April of 2000.  (TR 252-55).  Dr. Leib conducted a thorough

physical examination of plaintiff and reviewed X-rays of her

cervical spine and wrist.  Dr. Leib's assessment of plaintiff's

limitations (essentially a limited range of light work) was adopted

by the ALJ.  (TR 18, 20, 255).  Dr. Leib's findings are consistent

with relevant medical evidence.  (See, e.g., TR 1095-96 (physical

exams in June of 2001 showing normal neurological and

musculoskeletal exam); TR 1097 (exam in May of 2001 showing normal

neck and "sensory intact"); TR 1108 (February 2001 exam showing

normal neurological findings); TR 1111 (February 2001 treatment

notes recording normal motor strength and plaintiff's report that

---

[3] "An individual shall not be considered to be disabled for
purposes of this title if alcoholism or drug abuse would (but for
this paragraph) be a contributing factor material to the
Commissioner's determination that the individual is disabled."
42 U.S.C. § 423(d)(2)(C).  Thus, where there is medical evidence
of drug addiction or alcoholism, the ALJ must decide whether the
plaintiff still would be disabled if the plaintiff stopped using
drugs or alcohol.  See 20 C.F.R. § 416.935.  If so, the drug or
alcohol abuse is not a contributing factor material to the
disability and plaintiff is not entitled to benefits.  Id.  Here,
the ALJ determined that, even considering the drug and alcohol
use, the plaintiff is not disabled.  See TR 17.

1  she has had several CT scans which were all normal); TR 1123 (2000
2  exam showing normal neurological findings) TR 1126-27 (September
3  2000 exam showing able to heel and toe walk, some tenderness over
4  lumber spine, but normal motor strength and noting no pain or
5  numbness in legs or impact on bowel/bladder function); TR 1128-30
6  (2000 exams showing normal musculoskeletal and neurological
7  findings); TR 1158-59(March 2000 normal physical exam after
8  plaintiff admitted to hospital after sleeping pill and alcohol
9  overdose)).   Accordingly, Dr. Leib's opinions constitute
10 substantial evidence supporting the ALJ's opinion.  See  Thomas v.
11 Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)("The opinions of non-
12 treating or non-examining physicians may also serve as substantial
13 evidence when the opinions are consistent with independent clinical
14 findings or other evidence in the record.").

15     The ALJ did not materially err in his consideration of Dr.
16 Ballaine's opinions.

17          C.   Lay Witness Testimony

18     Plaintiff finally contends that the ALJ erred by failing to
19 properly consider third party statements.

20     In determining whether a plaintiff is disabled, an ALJ must
21 consider lay witness testimony concerning a claimant's ability to
22 work.  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th
23 Cir. 2006).  However, if the ALJ wishes to discount the testimony of
24 a lay witness, the ALJ need only give reasons germane the witness
25 for discrediting it.  Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th
26 Cir. 2005).

27     Here, plaintiff concedes that the ALJ considered the third
28
                                  14

party statements of record.  (Plaintiff's Brief at 6-7; see also TR 19-20).  However, plaintiff contends that the ALJ failed to provide "reasons germane to the witness" for rejecting these statements.

Plaintiff is incorrect.  The ALJ specifically considered the third party statements of record attesting to plaintiffs symptoms and functioning, observing, correctly, that they essentially mirror plaintiff's allegations.  (TR 19, 20, 117-22, 129-34, 584-89).  He found the allegations of pain and excess symptoms less than credible for a number of reasons.  For example, the ALJ noted the absence of objective findings supportive of her claims of debilitating pain, specifically pointing out that diagnostic studies concerning her headaches have yielded normal results (TR 386, 876, 1005, 1062, 1079), only mild or slight cervical and lumbar abnormalities (TR 255, 365), no objective signs of muscle atrophy in the extremities (suggesting reduced movement due to pain), and no persistent neurological deficits or persistent inflammatory signs.  (TR 252-55).  In addition, the ALJ found that the third party allegations of plaintiff's problems with memory and concentration were contrary to the report of the psychiatrist who examined plaintiff consultatively in 2000 and who found no deficits in these areas.  (TR 20; see also TR 246-50).  These are proper reasons for discounting the credibility of lay statements concerning symptoms and functioning. See Bayliss v. Barnhart, 427 F.3d at 1218 (inconsistency with medical evidence is a proper "germane" reason for discrediting the testimony of friends and family members).

The ALJ's consideration of the third party statements of record is free from material legal error and supported by substantial

1  evidence.

2                            <u>CONCLUSION</u>

3       Plaintiff clearly has severe impairments and is currently

4  receiving benefits.  However, the time period at issue here is prior

5  to May 8, 2001 and the Commissioner found that plaintiff could

6  perform her past relevant work during that period.  A plaintiff who

7  can still perform work in the national economy, even with a severe

8  impairment, is not disabled as that term is defined by the Act.  <u>See</u>

9  <u>generally</u> <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1395 (9th Cir. 1991).

10 Furthermore, if the evidence can reasonably support either affirming

11 or reversing the Commissioner's conclusion, the court may not

12 substitute its judgment for that of the Commissioner.  <u>Flaten v.</u>

13 <u>Secretary of Health and Human Services</u>, 44 F.3d at 1457.

14      After careful consideration of the record as a whole, the

15 magistrate judge concludes that the Commissioner's decision is

16 supported by substantial evidence and is free from material legal

17 error.  Accordingly, it is order that the Commissioner's motion for

18 summary judgment be GRANTED and that judgment be entered in favor of

19 the Commissioner.

20      This opinion constitutes the court's findings of fact and

21 conclusions of law.

22 DATED: June 14, 2007

                           CAROLYN TURCHIN
23                         _____
                           CAROLYN TURCHIN
24                         UNITED STATES MAGISTRATE JUDGE

25

26

27

28
                                   16